# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **JUDGE RICHARD L. SPEER** |
| Debra Kay Roberts | ) | |
| | ) | Case No. 08-3382 |
| Debtor(s) | ) | |
| | ) | (Related Case: 08-35355) |
| Debra Kay Roberts | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. Department of Education, et al. | ) | |
| | ) | |
| Defendant(s) | ) | |

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine Dischargeability of Debt. At issue at the Trial was whether the Debtor was entitled to receive a discharge of her student-loan obligations pursuant to the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). At the conclusion of the Trial, the Court required the Debtor to submit updated financial information, and deferred ruling on her Complaint so as to afford the opportunity to consider this information. The Debtor has since filed this information with the Court. The Court has now had the opportunity to review this information, as well as the arguments made by the Parties, the evidence presented at the Trial, and the applicable law. Based upon this review, the Court, for the reasons stated herein, declines to grant the relief requested by the Debtor.

**Debra Kay Roberts v. U.S. Department of Education, et al.**
Case No. 08-3382

## DISCUSSION

In her Complaint, the Plaintiff seeks a determination that those obligations she incurred to finance her education are dischargeable debts based upon the "undue hardship" exception to nondischargeability set forth in 11 U.S.C. § 523(a)(8). This section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
>> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
>>
>>> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>>
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>>>
>>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

Pursuant to 28 U.S.C. § 157(b)(2)(I), a determination regarding the dischargeability of a particular debt is deemed to be a "core proceeding." Accordingly, on the issue of "undue hardship" under § 523(a)(8), this Court has the jurisdictional authority to enter final orders and judgments. 28 U.S.C. §§ 157(b)(1).

A primary policy goal of the Bankruptcy Code is to afford a debtor a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). In conformity with this policy, most types of debts are dischargeable in bankruptcy. For certain types of debts, however, Congress

Page 2

determined that competing interests of public policy outweighed a debtor's need for a fresh start. *Merrill v. Merrill (In re Merrill)*, 252 B.R. 497, 503 (10th Cir. B.A.P. 2000).

Beginning in 1976, obligations incurred by a debtor to finance a higher education have fallen within the category of debts which are not subject to being discharged in bankruptcy. The policy reasons underlying this decision arose from two concerns: (1) the perceived need to rescue the student-loan program from potential insolvency; and (2) the goal of preventing abuse of the bankruptcy system by students who finance their higher education through the use of government-guaranteed loans, but later file bankruptcy petitions for the purpose of discharging their educational debt. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93rd Cong., 1st Sess., Pt. II 140, n. 14 (1973); *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 732-33 (Bankr. N.D.Ohio 1999).

Yet, notwithstanding such policy concerns, Congress also determined that exceptional circumstances could arise which would warrant carving out an exception to the general rule that student-loan debts were nondischargeable. This is in contrast to certain other types of nondischargeable debts which, so long as they qualify as the type of debt excepted from discharge, are absolutely excluded from the scope of a bankruptcy discharge. *See, e.g.*, 11 U.S.C. § 523(a)(2)/(4)/(6) (excepting generally from discharge debts arising from a debtor's wrongful acts). In carving out an exception to nondischargeability, Congress provided that student-loan debts could be discharged in bankruptcy upon a showing that repaying the loan would impose upon the debtor and/or the debtor's dependents an "undue hardship." 11 U.S.C. § 523(a)(8).

Although the Bankruptcy Code does not define the term "undue hardship," the term necessarily denotes a heightened standard, requiring a showing beyond the garden-variety financial hardship experienced by most debtors who seek bankruptcy relief; otherwise, the exception would swallow the rule. *In re Frushour*, 433 F.3d 393, 400 (4th Cir. 2005). In furtherance of the heightened

Page 3

**Debra Kay Roberts v. U.S. Department of Education, et al.**
Case No. 08-3382

standard of financial hardship needed to discharge student loans under § 523(a)(8), the Sixth Circuit Court of Appeals has adopted a three-part test, known as the Brunner test, named for the case from which it originated.[1] *Barrett v. Educational Credit Management Corp.*, 487 F.3d 353, 358 (6th Cir. 2007), *citing Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 385 (6th Cir. 2005).

Under the Brunner test, three elements must exist for a debtor to obtain an "undue hardship" discharge of their student-loan debt:

> (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

> (2) The additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

> (3) That the debtor has made good faith efforts to repay the loans.

It is a debtor's burden to show the existence of each of these elements by at least a preponderance of the evidence. *Barrett*, 487 F.3d at 358-59.

For the three elements of the Brunner Test, the Debtor concentrated on the first and second elements, pointing to these facts:

> She is married, and has five children, three of whom have "special needs."

> Her student-loan obligations total $192,415.74 and her husband has student-loan obligations of approximately $235,000.00.

---

[1] *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir. 1987).

Page 4

>She and her husband, both of whom teach for a local community college, experience a shortfall every month in their household budget. In terms of specific numbers, the Debtor reported $3,318.61 in net monthly household income and necessary monthly expenses of $3,355.57. For her expenses, the Debtor pointed out that her itemized expenses do not even account for items such as home maintenance, charitable contributions, and medical expenses. The Debtor also called attention to the fact that she and her husband are in arrears on many of their utility bills.

Based upon the evidence before the Court, there is no reason to question the Debtor's portrayal of her present financial condition and inability to presently pay her student-loan obligations. Consequently, a finding that the Debtor has met her evidentiary burden under the first prong of the Brunner test is appropriate. In any event, at the Trial the Defendant did not take issue with the Debtor's position regarding the first prong of the Brunner Test. Instead, the Defendant focused on the latter two elements of the Brunner test, especially the Test's third prong.

Under the third prong of the Brunner test, a debtor may only receive an "undue hardship" discharge of their student loan if they show that they have made a good faith effort to repay the obligation. This requirement serves the goal of helping to ensure that a debtor acts responsibly toward their student-loan creditor given that educational loans are in most cases extended without regards to a debtor's creditworthiness, with the expectation that the debtor will use their education to obtain remunerative employment so as to be able to repay the debt. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 243 (Bankr. N.D.Ohio 2003).

In this matter, the evidence shows that, with the exception of a couple of minor payments made eight years prior, the Debtor has not made any voluntary payments toward her student-loan obligations. This lack of any meaningful payment on her student-loan obligations works heavily against a finding of good faith on the part of the Debtor. As this Court has often noted, a primary consideration for the third prong of the Brunner test is axiomatic: the extent to which any voluntary payments were made toward the student-loan obligation. *See, e.g., Sandra Cekic-Torres v. Access*

Page 5

Debra Kay Roberts v. U.S. Department of Education, et al.
Case No. 08-3382

*Group, Inc. (In re: Cekic-Torres)*, 431 B.R. 785, 794 (Bankr. N.D.Ohio 2010), *citing Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 779 (Bankr.N.D.Ohio 2007) (inherent in any good-faith analysis under the third prong of the Brunner test is whether and the extent to which the debtor actually made any voluntary payments on the obligation).

Still, this Court has observed that "'good faith' is an amorphous concept, and therefore is largely dependent upon the differing circumstances of each case. As such, whether a debtor has made payments on a student-loan obligation will not always be dispositive." *Grant v. United States Dept. of Ed. (In re Grant)*, 398 B.R. 205, 212 (Bankr.N.D.Ohio 2008). For example, recently in the case of *In re: Cekic-Torres*, 431 B.R. 785 (Bankr. N.D.Ohio 2010), this Court found that, for purposes of the Brunner test, a finding of good faith was warranted, notwithstanding the lack of any payments made by the debtor on her student-loan obligation. Tipping the balance in favor of this outcome were two considerations.

First, in *In re: Cekic-Torres* the financial hardship of the debtor, a middle-aged woman, arose as the result of a decline in income stemming from a medical condition which was only incurred by the debtor after she had completed her education. As such, when her educational debt was incurred, the Court concluded that the debtor had no reason to believe that her financial situation would deteriorate so as to leave her unable to pay her educational debts. Second, in *In re: Cekic-Torres*, evidence was introduced showing that, from an earlier educational endeavor, the debtor had repaid all her student loans, thereby reinforcing the debtor's position that she intended to act in good faith toward her student-loan debt.

These attributes of *In re: Cekic-Torres*, however, are not present in the instant case. To begin with, both the Debtor and her husband are still young, and neither report any serious health issues. Moreover, the facts presented in this case show that the Debtor accumulated her student loans over

08-03382-rls    Doc 67    FILED 12/07/10    ENTERED 12/07/10 14:56:56    Page 6 of 9

**Debra Kay Roberts v. U.S. Department of Education, et al.**
Case No. 08-3382

a long period of time, beginning in 1994 and continuing through to the near present. The outstanding balance on these loans now stands at almost $200,000.00.

Yet, despite incurring such a significant amount of debt, there is no indication that the Debtor ever stopped to consider her ability to repay her educational obligations. Nor did any unforseen event suddenly cause the Debtor to realize that her student-loan obligations were becoming unwieldy. In this regard, the Debtor fully acknowledged that both she and her husband continued to incur significant amounts of student-loan debt all during the time in which her five children were born.

It is also relevant that the Debtor is now participating in what is known as the Income Contingent Repayment Program under which her required monthly payment on her student loans is listed as $0.00. (Ex. A, pg. 5). In very general terms, this program does not base repayment of a student loan on an amortization schedule, but instead bases repayment of an educational debt solely on a debtor's ability to pay. Thereafter, if, based upon a debtor's ability to pay, the loan is not fully repaid in 25 years, the balance of the loan is forgiven. 20 U.S.C. § 1087e(d)(1)(D); 34 C.F.R. § 685.209(c)(3).

The Debtor offered no viable reason as to how she would be harmed by continuing to participate in the Income Contingent Repayment Program, particularly given that she does not presently have to make any monthly payments. Importantly, for this purpose, it is noted that if the Debtor's situation were to change for the worse, such as if a serious medical condition were to arise, the Debtor is protected by § 523(b) which provides that a decision as to the nondischargeability of a student-loan obligation is not *res judicata*.

In conclusion, the weight of evidence in this matter does not, for the reasons set forth herein, warrant a finding that the Debtor, as applied to the Brunner Test, made a good faith effort to repay her student-loan debts. Consequently, as it is the Debtor's burden to establish each and every element

Page 7

**Debra Kay Roberts v. U.S. Department of Education, et al.**
Case No. 08-3382

of the Brunner test, the Court cannot find that the "undue hardship" standard for discharging student loans under § 523(a)(8) exists in this particular case. *O'Hearn v. Educ. Credit Mgmt. Corp.*, 339 F.3d 559, 565 (7th Cir. 2003).

In reaching the conclusions found herein, the Court has considered all the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the obligations incurred by the Debtor, Debra Kay Roberts, to finance her higher education are not subject to the discharge injunction of 11 U.S.C. § 524.

***IT IS FURTHER ORDERED*** that the Plaintiff/Debtor's Complaint be, and is hereby, DISMISSED.

Dated: December 7, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 7th day of December 2010 to:

Direct Loan Servicing Center
P.O. Box 4609
Utica, NY 13504

Education Department Office of General Counsel
400 Maryland Ave SW Room 6E353
Washington, DC 20202

Steven M. Dettelbach
United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604-2624

Debra Kay Roberts
605 Lincolnshire Lane
Findlay, OH 45840

Robert B. Hollister
PO Box 1086
Findlay, OH 45839-1086

US Attorney
Four Seagate Room 308
Toledo, OH 43604

US Attorney
Office of the US Attorney
1800 Bank One Ctr
600 Superior Ave
East Cleveland, OH 44114-2600

c/o Guillermo Rojas United States Department of Education
United States Attorneys Office
433 N. Summit St. Suite 308
Toledo, OH 43604

                                          /s/Jennifer S Huff
                                    Deputy Clerk, U.S. Bankruptcy Court